IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INDIAN HARBOR INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 06 C 3008 ) |
| ROBERT J. LUNN, et al., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Indian Harbor Insurance Company's ("Indian Harbor") motion for summary judgment. This matter is also before the court on Defendants' motion for summary judgment. For the reasons stated below, we deny Indian Harbor's motion for summary judgment and grant Defendants' motion for summary judgment.

## BACKGROUND

Indian Harbor alleges that it is an insurance company that issued Financial Services Liability Insurance Policy No. ELU 85078-01 ("Policy") to Defendant Lunn

1

Partners, LLC ("Lunn Partners") from December 5, 2003, through December 5, 2004. Indian Harbor contends that Lunn Partners is owned by Defendant Robert J. Lunn, ("Lunn"), Ridgeland Investors LLC, Howard Conant, Arthur Watson, Douglass Gray ("Gray"), KMK & Associates, and Peer Pedersen ("Pederson"). Indian Harbor claims that the Policy requires an insured to give "written notice to the Insurer of any Claim as soon as practicable after it is first made" as a "condition precedent to any right to payment under [the] Policy." (A. Compl. Par. 31).

Indian Harbor contends that on March 9, 2004, Defendants Scottie Pippen ("Pippen") and Air Pip, Inc. ("Air Pip") filed a complaint relating to the purchase of a Gulfstream airplane ("Air Pip Complaint") against Lunn and Lunn Partners in the Circuit Court of Cook County, Illinois. Indian Harbor argues that it was not provided with notice of the Air Pip Complaint until February 8, 2006. Indian Harbor further claims that a second complaint in a separate action ("Pippen Investment Complaint") was filed by Pippen against Lunn, Lunn Partners and Defendant Lunn Partners Cash Management, LLC ("LPCM") on April 8, 2004. On May 27, 2004, the Pippen Investment Complaint was allegedly amended. Indian Harbor contends that it was first notified of the Pippen Investment Complaint on July 20, 2004. According to Indian Harbor, Lunn Partners provided Indian Harbor with a copy of the original Pippen Investment Complaint, as opposed to the amended version. Additionally, Indian Harbor claims that in Lunn Partners' notice, Indian Harbor also received a copy of a proposed settlement between Pippen, Lunn, and Lunn Partners. Indian Harbor contends that on August 12, 2004, it sent a return letter to Lunn's and

Lunn Partners' attorney, Bernard Conway ("Conway"), requesting additional information, and further stated that until such information was received, Indian Harbor reserved the right to deny coverage due to Lunn and Lunn Partners' untimely notice. Indian Harbor also contends that Conway was not capable of handling the litigation as to the Pippen Investment Complaint. Indian Harbor claims that Lunn and Lunn Partners never responded to its August 12, 2004 letter. On October 1, 2004, the state court allegedly granted Pippen's motion for summary judgment as to the counts added by the amendment of the Pippen Investment Complaint. Indian Harbor argues that Lunn and Lunn Partners never provided notice of such finding.

Indian Harbor alleges that Lunn was involuntarily placed into Chapter Seven bankruptcy on February 10, 2005, which was subsequently converted to a Chapter Eleven proceeding on March 23, 2005 ("Lunn Bankruptcy"), and that Lunn Partners was involuntarily placed into Chapter Seven bankruptcy on August 19, 2005, which was later consolidated with the Lunn Bankruptcy in Chapter Eleven on September 21, 2005 ("Lunn Partners Bankruptcy"). Indian Harbor alleges that Pippen, Defendant Larsa Pippen, Air Pip and LPCM (collectively referred to as "Pippen Defendants") filed six proofs of claim against the debtors in the Lunn Partners Bankruptcy on June 17, 2005, and each filed an additional proof of claim in December 2005. Further, Indian Harbor claims that Defendants Pedersen & Houpt, Pederson, and James J. Clarke (collectively referred to as "Pedersen & Houpt Defendants"), filed a proof of claim in the Lunn Partners Bankruptcy on December 29, 2005. Indian Harbor contends that it first received notice of such proofs of claim

3

on January 24, 2006.

Indian Harbor contends that the Pedersen & Houpt Defendants filed a third-party complaint in the bankruptcy proceedings against Lunn Partners on March 24, 2006 ("Pedersen & Houpt Complaint"). According to Indian Harbor, the first notice of the Pedersen & Houpt Complaint that Lunn Partners provided Indian Harbor was on April 7, 2006. Indian Harbor also claims that on October 6, 2005, Defendants Harvey S. Wineberg and Steven H. Lewis (collectively referred to as "Wineberg Defendants"), filed a third-party complaint in the bankruptcy proceedings against Lunn and Lunn Partners ("Wineberg Complaint"). Indian Harbor alleges that it did not receive notice of the Wineberg Complaint until February 8, 2006.

Indian Harbor claims that on May 2, 2006, the automatic stay in the Lunn Partners Bankruptcy was modified to allow Defendants Katten Muchin Rosenman and Sheldon Zenner Pederson (collectively referred to as "Katten Defendants") to pursue claims against Lunn Partners to the extent that insurance coverage would apply. Lunn and Lunn Partners allegedly provided notice of such modification to Indian Harbor on May 2, 2006, and on May 16, 2006, a response letter was sent to Lunn and Lunn Partners denying coverage. Indian Harbor claims that on June 19, 2006, the Katten Defendants filed a third-party complaint in the bankruptcy proceedings ("Katten Complaint") against Lunn, Lunn Partners, the Pedersen & Houpt Defendants, and the Wineberg Defendants.

Indian Harbor claims that "Lunn and Lunn Partners have sought coverage for . . . the Pippen-Related Proofs of Claim, Pedersen & Houpt Proof of Claim, Pedersen

4

& Houpt Complaint, Wineberg Complaint and Katten Complaint" (collectively referred to as "Pippen-Related Matters"), the Air Pip Complaint, and the Pippen Investment Complaint. (A. Compl. Par. 73). Indian Harbors states that it sent denial of coverage letters to Lunn and Lunn Partners on April 28, 2006, and May 16, 2006. Indian Harbor brought the instant action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, against Lunn, Lunn Partners, the Pippen Defendants, the Pedersen & Houpt Defendants, the Weinberg Defendants, and the Katten Defendants. Indian Harbor seeks a ruling that it has no coverage obligations under the Policy for the Pippen-Related Matters. Pursuant to Lunn's Amended Joint Chapter Eleven Plan, Lunn Partners is non-operational, and, as such, has been discharged from all personal liability that arose from any actions which occurred prior to its filing for bankruptcy. Since the instant action involves insurance coverage from a period before the bankruptcies, Lunn and Lunn Partners are essentially nominal parties and are "functionally interpleading the Policy so as to let the [c]ourt determine the rights of Indian Harbor and the other defendants, who are the real parties in interest." (Def. Ans. 1). Indian Harbor and Defendants have each moved for summary judgment.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

5

Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id*. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and [draw] all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v.*

*American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

## DISCUSSION

Indian Harbor argues that it is entitled to a declaratory judgment that it has no coverage obligations under the Policy since Lunn Partners did not timely notify Indian Harbor of legal claims against Lunn and Lunn Partners. Under Illinois law, the construction of an insurance policy and determination of the rights and obligations under the policy are questions of law. *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997)(citing *Carum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993)). As such, summary judgment is a suitable method for interpreting an insurance policy or its terms. *Carum & Forster*, 620 N.E.2d at 1077. In construing an insurance policy, "the primary function of the court is to ascertain and enforce the intentions of the parties as expressed in the agreement." *Id*. at 1078. If the words in the policy are plain and unambiguous, the court will assign them their ordinary meaning and will apply them as written. *Id*. When reviewing the words of the policy, the court "will not search for ambiguity where there is none." *Id*.

An insurer's duty to defend an insured is triggered "when, based on the pleadings, there is a claim that is potentially covered by the insurance agreement." *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 333 (Ill. 1991); *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1134 (Ill. 1999)(citing *Waste Mgmt., Inc.*, 579 N.E.2d at 333)). An insurer that refuses to

7

defend an insured in a matter that is potentially covered by the policy "may not simply refuse to defend the insured" and take no other action. *Id.* The insurer is required to either "defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage" and "[i]f the insurer fails to do this, and is subsequently found to have wrongfully denied coverage, it is estopped from later raising policy defenses to coverage." *Id*.

The Policy at issue reads, in relevant part:

I. GENERAL DEFINITIONS

> . . .
>
> (B) "Claim" means:
> > (1) any written notice received by an Insured that any person or entity intends to hold any Insured responsible for a Wrongful Act;
> > (2) any civil proceeding in a court of law or equity, or arbitration; or
> > (3) any criminal proceeding which is commenced by the return of an indictment.
>
> (C) "Defense Expenses" means reasonable legal fees and expenses incurred in the defense of any Claim including the premium for an appeal bond, attachment bond or similar bond but will not include applying for or furnishing such bond. Defense Expenses will not include any Insured's overhead expenses or any salaries, wages, fees, or benefits of its directors, officers, trustees or employees.
>
> (D) "Insured" shall have the meaning given to that term in each Coverage Part attached hereto.
>
> (E) "Insured Person" shall have the meaning given to that term in each Coverage Part attached hereto.

(F) "Interrelated Wrongful Acts" means Wrongful Acts which are based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related or series of related facts, circumstances, situations, transactions or events.

(G) "Loss" means damages, judgments, settlements or other amounts (including punitive or exemplary damages where insurable by law) in excess of the Retention that the Insured is obligated to pay, and Defense Expenses, whether incurred by the Insurer or the Insured, in excess of the Retention.

. . .

(I) "Policy Period" means that period from the Inception Date to the Expiration date. . . .

. . .

II. GENERAL CONDITIONS

. . .

(B) DEFENSE, SETTLEMENT AND ALLOCATION COSTS
(1) It shall be the duty of the Insureds to defend any Claim under this Policy.

(C) NOTICE
(1) As a condition precedent to any right to payment under this Policy, the Insured shall give written notice to the Insurer of any Claim *as soon as practicable* after it is first made.
(2) If, during the Policy Period, the Insured first becomes aware of a specific Wrongful Act, and if, during the Policy Period, the Insured:
(a) provides the Insurer with written notice of the specific Wrongful Act, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, and the circumstances by which the Insured first became aware of such Wrongful Act; and

> > (b) requests coverage under this Policy for any subsequently resulting Claim for such Wrongful Act; then any Claim subsequently made arising out of such Wrongful Act will be treated as if it had been first made during the Policy Period.
>
> > . . .
>
> > (D) INTERRELATED CLAIMS
> > > All Claims arising from Interrelated Wrongful Acts shall be deemed to constitute a single Claim and shall be deemed to have been made at the earliest time at which the earliest such Claim is made or deemed to have been made pursuant to GENERAL CONDITIONS (C)(1) or, if applicable, GENERAL CONDITIONS (C)(2).
>
> > . . . .

(P Ex. K)(emphasis added).

I. Claim Preclusion

As an initial matter, although Indian Harbor's sole argument in its motion for summary judgment relates to the notice requirement of the Policy, we note that Indian Harbor has included facts, allegations, and arguments in its motion for summary judgment and Local Rule 56.1 statement of undisputed material facts that relate to allegations that Lunn Partners breached the Policy in ways other than by failing to provide adequate notice. However, on April 28, 2006, and May 16, 2006, Indian Harbor sent letters to Lunn and Lunn Partners denying coverage for the Pippen Investment Complaint, Air Pip Complaint, and the Pippen-Related Matters. The April 28, 2006, letter stated, in part:

> The Insured failed to give notice to Indian Harbor of the claims against them as soon as practicable. Because the Insureds have failed to comply with their notice obligations under the Policy, there is no coverage for the Pippin Investment Complaint and the Pippen-Related Matters.
>
> If coverage were not barred for the reason set for above, other terms and conditions of the Policy could be implicated. Accordingly, Indian Harbor reserves all of its rights under the Policy and at law, including the right to supplement this analysis and raise additional defenses to coverage under the Policy. . . . .

(P Ex. VV Apr. 28, 2006 Letter 11-12). In addition, the May 16, 2006, letter stated, in part:

> Indian Harbor adopts and incorporates by reference the coverage position and reservation of right[s] set forth in the April 28 Letter.

(P Ex. VV May 16, 2006 Letter 11-12).

Based on the representations in the letters, Indian Harbor denied coverage to Lunn and Lunn Partners on the sole basis that Lunn Partners did not provide Indian Harbor timely notice of the litigation and, as such, any arguments, statements, or allegations for its denial of coverage under the Policy for other reasons is improper. *See Larson v. Johnson*, 116 N.E.2d 187, 188-192 (Ill. App. Ct. 1953)(explaining that in the insurer-insured context, when a party initially asserts specific reasons for its being freed from an otherwise binding contractual obligation, the party asserting the reasons for breaking the contract will not be allowed to advance any different or additional grounds during the course of litigating the termination of the contract); *see also Harbor Ins. Co. v. Cont'l; Bank Corp.*, 922 F.2d 357, 362-64 (7th Cir. 1990)(noting that under Illinois law a party may not "mend its hold" and argue

reasons outside the initial reasons for breaking an otherwise valid contractual obligation). Although Indian Harbor stated in the cancellation letters that it reserved its rights to cancel the Policy for other reasons, the basis for cancellation of the Policy, as argued in Indian Harbor's summary judgment briefs, was that Lunn Partners "did not provide timely notice of the litigation." (P SOF Par. 80); (P Mot. 1)(stating that Indian Harbor "seeks a declaratory judgment concerning the breach of notice provision in the" Policy). Therefore, Indian Harbor is precluded from arguing reasons other than that Lunn Partners did not provide timely notice of the lawsuits and we will consider only the issue of whether Lunn Partners timely notified Indian Harbor of the lawsuits. Any other undisputed evidence presented by Indian Harbor that is outside this context will be analyzed, as is explained below, in the context of whether Indian Harbor was prejudiced by Lunn Partners' alleged delay.

II. Notice of Pippen Investment Complaint

Indian Harbor argues that it does not have any coverage obligations under the Policy since Lunn Partners failed to give notice of the Pippen Investment Complaint "as soon as practicable." (P Ex. K, II(C)). The undisputed evidence shows that Indian Harbor admits that the Pippen-Related Matters are interrelated claims. (P Ex. VV May 16, 2006 Letter 11-12). Under Illinois law, if an insurance policy "includes a provision requiring the insured to notify the insurer of a suit against it, the notice

12

provision is a condition precedent to the triggering of the insurer's contractual duties." *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 833 N.E.2d 871, 873 (Ill. App. Ct. 2004)). If the "insured fails to comply with a notice provision, the insurer will be relieved from its duties to defend and indemnify under the policy." *Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.,* 729 N.E.2d 915, 921 (Ill. App. Ct. 2000). As such, "notice provisions are valid prerequisites to coverage and not mere technical requirements which the insured is free to overlook or ignore with impunity." *Kerr v. Illinois Cent. R.R. Co.*, 670 N.E.2d 759, 765 (Ill. App. Ct. 1996)).

In the instant action, the Policy states that Lunn Partners was to provide notice to Indian Harbor "as soon as practicable" of an occurrence that could give rise to a claim and of any lawsuit. (P Ex. K, II(C)). Under Illinois law, a provision requiring notice as soon as practicable requires notification within a reasonable time. *Country Mut. Ins.*, 833 N.E.2d at 874; *Sears, Roebuck & Co. v. Seneca Ins. Co.*, 627 N.E.2d 173, 177 (Ill. App. Ct. 1993). If the relevant facts and circumstances concerning the delay are undisputed, the issue of whether notice was provided within a reasonable time is a legal question for the court to decide. *Northern Ins. Co. of New York v. City of Chicago*, 759 N.E.2d 144, 149 (Ill. App. Ct. 2001). An insured does not lose coverage if he allows a considerable length of time to pass before notifying the insurer where the delay in notifying the insurer is justifiable. *Id.* at 149. Consideration is also given as to whether the insured's delay prejudiced the insurer. *Northbrook*, 729 N.E.2d at 922.

A. Timeliness

The undisputed facts establish that on April 8, 2004, Pippen filed the Pippen Investment Complaint against Lunn and Lunn Partners and that Indian Harbor was notified of the Pippen Investment Complaint on July 20, 2004. Such a delay in reporting was relatively short, given the complexity of the lawsuit and the claims against Lunn and Lunn Partners. In addition, the Pippen Investment Complaint was amended on May 27, 2004, which is less than two months from the date that Indian Harbor was notified of the pending litigation. Further, there is no evidence that Indian Harbor was somehow impeded in its ability to investigate the claim by the short delay from April until July 2004. At the time that Indian Harbor was notified of the lawsuit, the state court had yet to rule on the dispositive motions. Not until October 1, 2004, two and one half months after Indian Harbor was notified of the lawsuit, did the state court grant partial summary judgment on the Pippen Investment Complaint. Further, as discussed below, Indian Harbor did not take reasonable measures to investigate the claims once it was notified of the Pippen Investment Complaint. *See Equity Gen. Ins. Co. v. Patis*, 456 N.E.2d 348, 352 (Ill. App. Ct. 1983)(noting that the purpose of an "as soon as practicable" provision is to allow the insurer to timely and thoroughly investigate the claims against the insured and to protect the insurer against unjustified claims). Thus, no reasonable jury could find other than that Lunn Partners provided timely notice of the Pippen Investment Complaint.

Indian Harbor also argues that even if Lunn Partners provided it with timely notice of the Pippen Investment Complaint, it was not timely notified of the Air Pip Complaint since Lunn Partners did not provide Indian Harbor with a copy of the Air Pip Complaint. However, the Policy contains no requirement that Indian Harbor must be provided with the specific litigation initiating document. Rather, the Policy only provides that Lunn Partners "shall give written notice to the [Indian Harbor] of any Claim *as soon as practicable. . . .*" (P Ex. K, II(C))(emphasis added). In the instant matter, the undisputed evidence shows that Catherine Palmieri ("Palmieri"), Indian Harbor's claims counsel for the Pippen-Related Matters, testified that Lunn Partners' notification of the Pippen Investment Complaint also contained notice of the Air Pip Complaint. Specifically, when asked if "she had personal knowledge that [Pippen] had filed a lawsuit against Lunn Partners regarding the Gulfstream aircraft" in the July 20, 2004, notification letter of the Pippen Investment Complaint, Palmieri admitted that she did. (P Ex. L 58-61); (D SOF Par. 19-25). In addition, Palmieri was questioned as to whether Lunn Partners "provided [her] with a document that told [her] about the Gulfstream aircraft litigation," she responded that Indian Harbor was "provided with a document that says that in it." (P Ex. L 58-61); (D SOF Par. 19-25). Therefore, as a matter of law, Indian Harbor was timely notified by Lunn Partners of the Air Pip Complaint.

B. Prejudice to Indian Harbor

15

Indian Harbor argues that it was prejudiced by receiving notice of the Pippen Investment Complaint on July 20, 2004, since Lunn Partners provided the Pippen Investment Complaint rather than the amended complaint, which was filed on May 27, 2004. (P Mot. 6). However, the Policy contains no requirement that Indian Harbor must be provided with a specific court document. Rather, the Policy only provides that Lunn Partners "shall give written notice to [Indian Harbor] of any Claim *as soon as practicable. . . .*" (P Ex. K, II(C))(emphasis added). As noted above, Indian Harbor was given timely notice of the pending litigation against Lunn and Lunn Partners. Any subsequent information as to the claims against Lunn and Lunn Partners could have been investigated by Indian Harbor. In fact, Indian Harbor admits that it failed to do even minimal investigation into the claims against Lunn and Lunn Partners. Had Indian Harbor investigated the claims once it was notified by Lunn Partners, Indian Harbor would not have "first bec[o]me aware that the complaint had been amended on January 6, 2005, after the court had awarded partial summary judgment." (P Mot. 6). Indian Harbor failed to perform nominal due diligence as to an action that it was timely notified of by Lunn Partners and Indian Harbor cannot now claim that it was prejudiced simply because it did not receive the amended complaint, which it could have received by requesting from either Lunn or Lunn Partners.

Indian Harbor also contends that, had Lunn Partners notified Indian Harbor of the Pippen Investment Complaint earlier, Indian Harbor "could have ensured that Lunn and Lunn Partners were represented by an experienced litigator rather than

Conway." (P Mot. 12). However, at the time Indian Harbor was notified of the Pippen Investment Complaint, no dispositive motions had yet to be ruled on by the state court. Indian Harbor has presented no evidence as to why it did not contact either Lunn or Lunn Partners once it was notified of the Pippen Investment Complaint, request the requisite facts that it needed to make a determination as to the capability of Lunn's and Lunn Partners' trial counsel, and subsequently, if Indian Harbor felt it necessary, request new counsel become involved in the matter. In addition, nothing in the record remotely suggests that Indian Harbor could not have taken these steps, that the state court would not allow new counsel to represent Lunn and Lunn Partners, or that Indian Harbor would have taken such steps to investigate the Pippen Investment Complaint if Indian Harbor was notified earlier. Rather, Indian Harbor's lack of investigation is evident based on the undisputed evidence that on August 12, 2004, nearly three weeks after receiving notice of the Pippen Investment Complaint, Indian Harbor "wrote to Conway seeking a detailed explanation as to why the Insureds did not seek to compel arbitration." (P. Mot. 12-13); (P SOF Par. 79). Further, as noted above, the undisputed facts show that Indian Harbor was not impeded in any way from investigating the claims in the Pippen Investment Complaint on its own. As such, Indian Harbor was not prejudiced when Lunn partners timely notified Indian Harbor of the Pippen Investment Complaint on July 20, 2004, but rather, if there was any prejudice at all, Indian Harbor was prejudiced by its own lack of due diligence and investigation, which it cannot now blame on Lunn Partners. Therefore, no reasonable jury could find other than that

17

Lunn Partners timely notified Indian Harbor of the Pippen Investment Complaint and that Indian Harbor was not prejudiced when it was notified of the Pippen Investment Complaint on July 20, 2004. In addition, we conclude that Indian Harbor cannot deny coverage on the basis that notice of a claim was not provided as soon as practicable. Based on the analysis above, we deny Indian Harbor's motion for summary judgment and grant Defendants' motion for summary judgment.

## CONCLUSION

Based on the foregoing analysis we deny Indian Harbor's motion for summary judgment and grant Defendants' motion for summary judgment.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 12, 2007